IN THE CIRCUIT COURT, FOURTH JUDICIAL CIRCUIT IN AND FOR DUVAL COUNTY, FLORIDA

INDEPENDENT MARKETING GROUP, INC., a Florida corporation,

Plaintiff,

v.

JERRY KEEN, an individual,
BRIAN J. KEEN, an individual,
WILLIAM MEGNA, an individual

Defendants.
_____________________________________/

Case No.: [illegible] 3 2 4
Division:

3:11-cv-447-J-25JBT
CVA

COMPLAINT

COMES NOW Plaintiff, Independent Marketing Group, Inc., ("IMG"), by and through its undersigned counsel, and files this Complaint against Defendants Jerry Keen, Brian J. Keen and William Megna, and in support thereof states:

1. This is a cause of action for damages in excess of $15,000 exclusive of costs, interest, and attorneys' fees.

2. Plaintiff, IMG, is a Florida corporation with its principal place of business in Jacksonville, Duval County, Florida.

3. Defendant, Brian J. Keen, is an individual who was at all times material hereto residing in St. Simons Island, Georgia.

4. Defendant, Jerry Keen, is an individual who was at all times material hereto residing first in St. Simons Island, Georgia and is now residing in Atlanta, Georgia.

5. Defendant, William Megna, is an individual who was at all times material hereto residing in Princeton Jct., New Jersey.

6. Pursuant to Florida Statute §48.193. Defendants are subject to the jurisdiction of the Courts of the State of Florida by committing tortious acts within this state, including but not limited to Duval County, Florida.

## GENERAL ALLEGATIONS

7. Plaintiff, IMG, is an independent insurance broker. IMG, through its CEO, Sheldon Bryan, hired Defendant, Brian Keen, as a sales manager, who ultimately rose in the company to become its President. IMG also hired Defendant, Jerry Keen, as a director of special markets to generate insurance business for IMG. Jerry Keen was, at the time, a member of the House of Representatives in Georgia who subsequently became the House Majority Leader until he retired in 2010.

8. Jerry Keen was a trusted friend of Carter Bryan, the father of Sheldon Bryan. Both Carter Bryan and Sheldon Bryan were at all times material hereto owners of IMG. Carter Bryan and Jerry Keen started as co-workers at The Independent Life Insurance Company approximately thirty-nine (39) years ago in Jacksonville, Florida and had done many business deals through the years, and the families were trusted friends having even traveled together on various occasions through the many years. Brian Keen, the son of Jerry Keen, became employed at IMG in 2006 and rose to become president in which capacity he served through a portion of the year 2010.

9. During Brian Keen's employment with IMG, Sheldon Bryan and Brian Keen shared a substantial amount of personal information as well as business related information, all with a goal of bettering the company, IMG, and the relationship between Sheldon Bryan and Brian Keen to the point that Sheldon Bryan began trusting Brian Keen with respect to his representations about financial matters and future business. This relationship even included an

unsecured personal loan of $98,700.00 in 2008 from Sheldon Bryan to Brian Keen and the almost immediate failure to pay by Brian Keen resulting in ongoing discussions about future business which would generate income to pay the loan.

10. Pursuant to its business development and a lead obtained by Sheldon Bryan, the CEO of IMG, IMG determined that it would be financially beneficial to invest in the development of a Multiple Employer Welfare Arrangement, commonly referred to as a "MEWA." A MEWA is, at its essence, a health insurance program that operates more efficiently than other insurance programs and can generate substantial savings from the purchase of insurance products by large associations and businesses through greatly reduced premiums. The generation of substantial savings through large associations and businesses also generates substantial income through the sheer volume of insurance products being sold.

11. In 2009, the Home Builders Association of Georgia ("HBAG"), which is an association of numerous contractors with employees and subcontractors, which would benefit from a MEWA, indicated an interest in a MEWA and IMG began to establish a relationship for the purpose of selling insurance products. HBAG is located in East Point, Georgia. Brian Keen eventually became involved in the development of this strategy. Other business entities also indicated an interest in establishing a MEWA and efforts were made to establish business relationships to sell insurance products through a MEWA, but HBAG was the initial focal point.

12. During the development of IMG's relationship with HBAG, Jerry Keen, pursuant to his employment with IMG, introduced Sheldon Bryan as well as his son, Brian Keen, to the controlling hierarchy of HBAG. Brian Keen usually handled any IMG communication with his father, Jerry Keen, and acted as the agent for Jerry Keen at all times material hereto including

both during Jerry Keen's employment with IMG and after Jerry Keen was no longer employed by IMG.

13. On September 2, 2009, Defendants attended the HBAG Fall Board Meeting in Amelia Island, Florida. Jerry Keen was specially recognized at the meeting as the House Majority Leader. Brian Keen was then specially introduced at the meeting on behalf of IMG to discuss the proposed MEWA that was to benefit HBAG members.

14. As a result of this presentation by Brian Keen on behalf of IMG, an HBAG task force committee was set up to address the potential use of the MEWA.

15. As part of the marketing of the MEWA by IMG to HBAG, IMG also approached QualCare, Inc. and other entities to be a part of the team to assist in the administration of the MEWA to sell insurance products to HBAG among others.

16. QualCare, Inc. is an administrator of insurance programs with a specialty in the administration of MEWAs. QualCare, Inc. was eventually added by IMG to the team of companies that IMG would be relying upon to develop, administer and sell insurance products through the MEWA to HBAG among others. Accordingly, QualCare, Inc. became a part of the marketing strategy developed by IMG. Other companies were approached and relationships were established as well to develop, administer and sell insurance products through the MEWA to HBAG among others.

17. IMG also retained William Megna, (hereinafter "Megna"), an attorney with the Megna Law Firm, to assist in the legislative process for the development of MEWA legislation with the State of Georgia and to represent its interests in Jacksonville, Florida. Megna is located in Princeton Jct., New Jersey and Megna has prior experience in the legislative issues surrounding the creation of a MEWA. Pursuant to his representation of IMG, Megna began

dealing directly with the Department of Insurance for the State of Georgia on behalf of IMG to assist in the process of developing the MEWA legislation. Megna also began advising IMG on day-to-day issues with other potential marketing targets such as Northside Hospital in Atlanta, Georgia, which had expressed a desire to own its own MEWA. Megna was retained by IMG and reported to Sheldon Bryan in Jacksonville, Florida.

18. At the outset of the plan to develop the relationship with HBAG among others and ultimately sell insurance products to HBAG, among others, IMG, with the knowledge of the Defendants, Brian Keen and Jerry Keen, used an established line-of-credit with a Jacksonville bank that was continued for the purpose of paying the salaries of Defendants and reimbursing Defendants for agreed upon expenses.

19. These expenses included but were not limited to office equipment, computers, an office assistant, office space, internet, telephones, facsimiles and the other usual and customary office products.

20. During this period of development of the HBAG business relationship, Brian Keen continued to commute from time-to-time from his residence in Georgia to Jacksonville, Florida to perform his salaried duties for IMG. He also kept in regular communication with IMG in Jacksonville via email, text and telephone at all times material hereto.

21. During the development of the business relationship with, *inter alia*, HBAG, Defendants, Brian Keen and Jerry Keen, raised the issue of having an equity ownership interest in the company that would be used for all the MEWA business. As a result of the equity ownership issue, among others, raised by the Defendants, by verbal agreement, a new company, IMG Commercial Lines, LLC ("IMG Commercial"), was formed and Defendants, Jerry and

Brian Keen, were provided an ownership interest of ten percent (10%) each the day after the September 2, 2009 HBAG Fall Board Meeting.

22. Further, as a result of the equity ownership of Brian Keen and Jerry Keen in the new corporation named IMG Commercial, and with the agreement and understanding of these Defendants, funds from IMG began being placed into a different bank account in the Jacksonville bank account that was opened and operated by IMG Commercial.

23. The salaries and expenses of Defendants, Jerry Keen and Brian Keen, were thereafter paid from the IMG Commercial account although Jerry Keen and Brian Keen continued on and remained as employees of IMG. As IMG continued to pay the salaries and expenses of Jerry Keen and Brian Keen, IMG, including Jerry Keen and Brian Keen, received interest from other business entities in the MEWA legislation and the ultimate use of a MEWA by each of the business entities expressing interest. A MEWA had the ability to be issued to the HBAG with other entities signing on under the umbrella of the MEWA to be developed by HBAG. A MEWA also had the ability to be approved and operated separately for other business entities that were large enough to utilize a MEWA and incur the associated expenses while at the same time, enjoying the benefits of a fully operational MEWA selling insurance products to employees and/or members. Accordingly, the concept developed by IMG and Jerry Keen and Brian Keen was always to use the MEWA through the HBAG for other business entities and to also establish relationships with other business entities expressing an interest in the use of MEWA in order to be able enjoy the same or similar economic benefits that IMG was to receive from the HBAG MEWA.

24. The development of the MEWA legislation and the HBAG business among others began to take longer than anticipated and the line-of-credit with the Jacksonville Bank was not

paid down in principal as agreed to as a result of the compensation of Jerry and Brian Keen and the related expenses discussed above. In the beginning of 2010, IMG made Defendants aware of the need to increase the pace and the ultimate inability to continue paying salaries and expenses due to cash flow issues until the HBAG began generating income from the purchase of insurance products.

25. Brian Keen, at all times material hereto, acted as the agent for Jerry Keen for the exchange of information for the IMG business as Jerry Keen was the majority leader of the house for the State of Georgia for a period of time and otherwise extremely busy with his political and consulting career and Brian Keen, through his then-position as President of IMG, and later through his position as a sales agent, was aware of the day-to-day affairs of IMG. On September 30, 2010 Brian Keen, who was handling payment of the salary of Jerry Keen, stopped the salary of Jerry Keen. Jerry Keen asserted he had sufficient resources to continue seeing the MEWA legislation process through and he could wait until IMG or the new company began generating income from the MEWA. Jerry Keen also expressly stated he wanted to take care of his son, Brian Keen, and would continue to make efforts getting a MEWA approved from the Department of Insurance once the legislative process was completed. IMG also understood from Jerry Keen that he would continue to be involved in the previously discussed plan to develop the MEWAs and share the profits.

26. While the development of the business relationship with HBAG among others and the relationship with QualCare, Inc. among others was continuing, Brian Keen became more and more financially desperate having already borrowed $98,700 from Sheldon Bryan, the CEO of IMG, with the promise of paying the monies back upon the sale of his home.

27. However, Brian Keen's home was worth less than its mortgage and he became more desperate, eventually having to refinance his home again with a personal guarantee from his father, co-defendant, Jerry Keen, in the fall of 2010.

28. Defendants, Jerry Keen and Brian Keen, eventually began discussing and conspiring to steal the HBAG business and its utilization of MEWA from IMG along with the associated business relationships developed by IMG such as QualCare, Inc., while Defendants, Jerry Keen and Brian Keen were still receiving a salary from IMG and while they were still pretending to cooperate with IMG in the development of the HBAG and QualCare, Inc. relationships and business among others. Defendants, Jerry Keen and Brian Keen, also began discussing and eventually conspired to steal all of the other potential business related to the use of MEWAs that they had been paid to develop by IMG. Defendants, Jerry Keen and Brian Keen, began and continued with this conspiracy knowing that the development of this business and these relationships was continuing to be funded by IMG with the line of credit requiring substantial interest payments to the Jacksonville Bank while IMG was forced to cut back on expenses to continue funding the MEWA development and the associated relationships.

29. After Jerry Keen left the employ of IMG on September 30, 2010, he continued making intentional misrepresentations about the development of the HBAG relationship, among others and the ultimate use of the MEWA through the HBAG among others. Through his intentional misrepresentations, Jerry Keen led IMG to believe that Jerry Keen and Brian Keen were continuing forward with IMG continuing to fund the expenses associated with the development of the HBAG relationship and other business and relationships (such as continuing to pay Brian Keen) and the MEWA legislation while at the same time, Jerry Keen was continuing to conspire to steal the business from IMG with his son, Brian Keen.

30. After Jerry Keen left the employ of IMG, he also continued using his son, Brian Keen, after Jerry Keen's salary from IMG ceased, to further the conspiracy in developing the HBAG account, among others, while Brian Keen continued accepting the salary, benefits and reimbursement of agreed upon expenses from IMG. Both Jerry and Brian Keen were aware during this timeframe that the continued payments to Brian Keen were directly affecting the line-of-credit of IMG with its bank in Jacksonville though, at the very least, the inability to pay down the principal amount on the debt. In fact, in September 2010, Brian Keen made a presentation to the bank in Jacksonville of the anticipated income from the MEWA with the HBAG for the purpose of deferring repayment of the loan to IMG so that Brian Keen could continue being paid by IMG, developing the relationship with the HBAG, having IMG pay the expenses for this development, thereby furthering the conspiracy and allowing Brian and Jerry Keen to apply for and obtain the MEWA and all of the associated business and relationships from IMG when the opportunity arose. The clear representation to the Jacksonville bank was that the line-of-credit would be paid back from the income stream anticipated from the HBAG's use of the MEWA resulting from IMG Commercial's (or another company to be created and owned in part by Jerry Keen and Brian Keen at the same levels of percentage ownership that they already had with IMG Commercial) contract with the HBAG.

31. Secretly conspiring to obtain approval for a MEWA and steal the HBAG business and then doing so was significant in that the MEWA legislation was drafted to be relatively exclusive making it difficult for another entity to apply for and obtain approval for a MEWA.

32. During this same timeframe, IMG continued paying the salary and funding the expenses of Defendant, Brian Keen, based upon the representations of this Defendant that the expenses were business-related.

33. IMG recently determined, after securing bank statements from its Jacksonville bank that were actually being forwarded to Brian Keen at his St. Simons Island, Georgia office, that Brian Keen was using an IMG debit card, unbeknownst to IMG, to pay for personal expenses such as meals and Lowe's that were not previously authorized or otherwise agreed upon. The fact that Brian Keen forwarded the bank statements of IMG Commercial to St. Simons Island was also unknown to IMG as Brian Keen did this to cover-up the fact he was taking money from IMG improperly and based upon false representations.

34. In order to secure the funds for these personal expenses, Brian Keen, as his personal financial situation continued to deteriorate, was regularly contacting Sheldon Bryan of IMG in Jacksonville, Florida to represent the amount of funds that were supposed to be business expenses that were to be placed in the account to pay for his business expenses as well as his personal expenses. Brian Keen then withdrew these funds from the bank account based upon these false representations all without the knowledge of IMG. The losses of IMG resulting from these misrepresentations by Brian Keen occurred in Jacksonville, Florida.

35. After September 30, 2010, Brian Keen continued accepting a salary, benefits and expenses including personal expenses, the personal expenses again being without the knowledge of IMG, while Brian Keen and Jerry Keen continued to further the conspiracy by fostering and developing the relationship with HBAG and others and positioning themselves to secure a MEWA, once the legislation passed, to effectively eliminate IMG from the HBAG business among others. The MEWA legislation was drafted to be relatively exclusive making it difficult to apply for and obtain the license for a MEWA once an initial license was granted. Brian Keen also began exclusively using Megna, thus further positioning Jerry Keen and Brian Keen to secure the HBAG business and approval for the use of a MEWA, among others.

36. At the beginning of the conspiracy to steal the HBAG business, among others, and secure the approval for a MEWA, Defendants began making misrepresentations to continue to further the interests of IMG in the development of the HBAG business, among others, and in the monitoring of the MEWA legislation. Defendant, Brian Keen, individually and on behalf of Jerry Keen, also acknowledged his and his father's twenty percent (20%) ownership in IMG Commercial or in the corporation that was to be created to contract for the HBAG business and secure and operate the MEWA. Jerry Keen and Brian Keen were secretly stealing the IMG business to further the conspiracy and personally benefit themselves. Both Jerry Keen and Brian Keen also misrepresented that the debt of IMG resulting from the MEWA business including HBAG would be paid back first.

37. Unbeknownst to IMG, Defendants established a new corporation at some point towards the end of the year 2010, and during the same process, approached the HBAG at or about the same time the MEWA legislation process was being completed, to secure a contract through the new corporation, thus effectively stealing the HBAG business through the use of a MEWA and all the associated relationships such as QualCare, Inc. previously established at the cost, expense and effort of IMG.

38. Defendants, Jerry Keen and Brian Keen, have subsequently failed to acknowledge the line-of-credit secured by IMG for the purpose of establishing the HBAG relationship among others, and to provide financing until the MEWA legislation was in place, despite these Defendants having previously acknowledged the debt and the intention to pay back said debt through the business and income stream generated by HBAG, among others, and the use of the MEWA once it was approved.

39. At some point in time, Defendants informed QualCare, Inc., among others, of their new company and new relationship with HBAG to the exclusion of IMG and the need for QualCare, Inc., among others, to deal with the new corporation owned and operated by the Defendants, Jerry Keen and Brian Keen, instead of IMG.

**COUNT I - BREACH OF FIDUCIARY DUTY**
**BRIAN KEEN AND JERRY KEEN**

40. IMG hereby re-alleges and incorporates the allegations of Paragraph 1 through 39 as if fully set forth herein.

41. During the course of performance of their contracts with IMG, Brian Keen and Jerry Keen acquired and abused the trust and confidence accepted by them and reposed to them by IMG. This alone bestowed a fiduciary duty upon Defendants with respect to IMG. Additionally, Brian Keen and Jerry Keen had an equity interest in IMG Commercial or any other business entity that IMG and Jerry and Brian Keen agreed to create as had been specifically discussed and agreed upon, in the event it was decided to create such an entity. This equity ownership entitled Defendants to twenty percent (20%) ownership of the company that was to handle the insurance business of one or more MEWAs with the HBAG and any other business generated including but not limited to Northside Hospital. The equity ownership of IMG Commercial by Jerry and Brian Keen further bestowed a fiduciary duty upon Defendants to their fellow owner and partner IMG.

42. IMG was dependent upon the Keens to advocate the use of a MEWA to the HBAG on behalf of IMG and protect IMG's interests with respect to same. IMG was dependent upon the Keens to monitor the completion date for the MEWA legislation and thereafter obtain approval of a MEWA for the HBAG as the head of the insurance department was a "good friend" of Jerry Keen as Jerry Keen himself stated.

43. Jerry Keen and Carter Bryan, an owner of IMG, had been friends for close to forty (40) years and had worked together or been business associates off and on during that same timeframe. As trusted friends, employees, business associates and owners of the Company, the Keens were provided with confidential information of IMG. Jerry Keen actively assured IMG, through Carter Bryan, that the legislation to create a MEWA and the relationship with the HBAG was proceeding as expected and specifically led his business associate and friend for nearly forty (40) years to believe that he, Jerry Keen, was still advocating the interests of IMG, that the process was going along smoothly and that all of the parties involved including IMG, Jerry Keen and Brian Keen, would soon have the MEWA business up and running and profits being generated.

44. In reality, Jerry Keen and his son, Brian Keen, who was actively and specifically providing the same assurances to IMG through Sheldon Bryan, were both at the same time, conspiring to take all the anticipated MEWA business. They were also secretly and actively recruiting the HBAG business, among others, for themselves and monitoring the MEWA legislation to secure a MEWA for the HBAG for their own profit and benefit to the exclusion of IMG.

45. After this conspiracy was created, and after the specific assurances detailed above were made to IMG about the MEWA and the HBAG relationship, among others, IMG learned that Brian and Jerry Keen had secretly contracted with the HBAG, formed another corporation and applied for and received an approval for a MEWA for the HBAG. Obviously, Jerry Keen and Brian Keen had the ability to take these actions based upon the relationships fostered and created by Jerry Keen and Brian Keen with the HBAG among others while the Keens were initially employed by IMG and then subsequently while Brian Keen was employed and Jerry

Keen was actively stating that he was continuing to further the interests of IMG for the benefit of IMG, Jerry Keen and his son, Brian Keen, through their ownership of the company that was to handle the MEWA business.

46. The Keens also betrayed IMG's trust and confidence and breached their fiduciary duties to IMG by, *inter alia*, using IMG's confidential information to secure the HBAG MEWA business for themselves rather than IMG and by using this confidential information to induce IMG to continue funding the development of the MEWA through Brian Keen's assurances along with his continued employment and associated expenses as well as Jerry Keen's reassurances previously described.

47. Due to the breaches of the fiduciary duties owed to IMG by Jerry Keen and Brian Keen, IMG has suffered damages in Jacksonville, Florida, in the form of the lost profits anticipated from the HBAG business and the lost profits from future MEWA business to be generated from the relationships established through funding provided by IMG and future business anticipated from establishing the HBAG business as a model for future business, which was all anticipated and discussed between IMG, Jerry Keen and Brian Keen as the goal to be achieved from their relationship and ownership in IMG Commercial or any other Company to be established and agreed upon.

48. All conditions precedent to bringing this action have been satisfied or waived.

WHEREFORE, IMG respectfully requests this Court to enter judgment against Defendants, Jerry Keen and Brian Keen, for damages, interest, costs, and any other and further relief this Court deems appropriate and just.

## COUNT II- TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP- BRIAN KEEN

49. IMG hereby re-alleges and incorporates the allegations of Paragraphs 1through 39 as if fully set forth herein.

50. An advantageous business relationship existed between IMG and the HBAG with respect to the implementation of the MEWA for which IMG had prospective legal and contractual rights.

51. Brian Keen had knowledge of this business relationship as he was employed by IMG to develop this relationship on behalf of IMG and facilitate the implementation of a MEWA with the HBAG. In exchange for these actions, among others, Brian Keen and accepted compensation from IMG.

52. Brian Keen unjustifiably and intentionally interfered with this relationship with HBAG, thereby causing damages to IMG.

53. Brian Keen appropriated the business relationship and opportunity for his own profit and personal benefit, not for IMG, and in fact, against IMG's best interests.

54. As a result of Brian Keen's interference with IMG's business relationship with the HBAG, IMG failed to obtain the actual MEWA business with the HBAG and IMG was therefore damaged in Jacksonville, Florida, as a direct and proximate result of the actions of Brian Keen. The damages suffered by IMG include but are not limited to all lost income arising from the loss of the HBAG MEWA business including but not limited to paying back the debt incurred by IMG to fund all of the salaries and expenses associated with the development of the MEWA business.

55. Brian Keen acted solely with an ulterior purpose and without an honest belief that his actions would benefit IMG, and as such is liable for unlawful interference with IMG's business relationship with the HBAG.

56. All conditions precedent to bringing this action have been satisfied or waived.

WHEREFORE, IMG respectfully requests this Court to enter judgment against Brian Keen for damages, interest, costs, and for any further and other relief this Court deems appropriate and just.

## COUNT III- FRAUD- BRIAN KEEN AND JERRY KEEN

57. IMG hereby re-alleges and incorporates the allegations of Paragraph 1 through 39 as if fully set forth herein.

58. IMG employed Jerry Keen and Brian Keen to represent its interests with respect to building a relationship between IMG and the HBAG, among others, and obtaining approval for and implementing a MEWA with the HBAG, among others, on behalf of IMG. After September 30, 2010, when Jerry Keen left the employ of IMG, he continued to make representations to IMG that he was looking after the interests of IMG to make sure that his son, Brian Keen, was successful in the HBAG relationship and the resulting MEWA business. Through his representations to IMG, Jerry Keen assured IMG that its interests were being pursued by Jerry Keen continuing to do the same activities that he previously had done when employed by IMG with the focus being more limited to development of the MEWA business including the HBAG relationship and all other relationships that might be beneficial for the use of further MEWA business.

59. During this time, Jerry Keen and Brian Keen made false statements to IMG that the relationships with HBAG and the legislation for creation of the MEWA were all going well,

that there was nothing to be concerned about, that the legislation would be completed in the near future, that the MEWA would then be obtained and set up for the HBAG and that the health insurance sales would begin with the resulting substantial income generated therefrom. Jerry Keen and Brian Keen further falsely represented that the IMG line-of-credit that was generating interest and not being paid down in principal would be paid back from the income stream generated by the HBAG's use of the MEWA and that both the Defendants were satisfied with the twenty percent (20%) ownership they had in IMG Commercial or a company to-be-formed by agreement. Both Defendants also represented that they were looking and would continue to look after the interests of IMG in developing the HGAB business to ultimately enter into a contract with the HBAG in relationship to the use of the MEWA, which was part of the intended plan all along between Jerry Keen, Brian Keen and IMG with respect to the MEWA.

60. All of the above representations were false and known to be false by these Defendants at the time the representations were made and all of the representations were material.

61. All of the above representations were made with the intent by Defendants to induce IMG to act upon the representations. Indeed, IMG relied upon these false representations, which caused IMG damages.

62. After Jerry Keen had already stolen the HBAG business, among others, and the resulting use of the MEWA, he misrepresented to IMG that he was still furthering the interests of IMG and his son, Brian Keen, who was still working for IMG. These false representations were made by Jerry Keen for the purpose of inducing IMG to continue funding the payments to Brian Keen for his work and his business expenses that were related to obtaining the HBAG business, among others, for IMG.

63. Due to the misrepresentations of Defendants, Jerry Keen and Brian Keen, and reliance upon them by IMG, IMG has suffered damages in Jacksonville, Florida, in the form of the lost profits anticipated from the HBAG business and the lost profits from future business generated from the MEWA business relationships established through funding provided by IMG and future business anticipated from establishing the HBAG business as a model for future business, which was all anticipated and discussed between IMG, Jerry Keen and Brian Keen as the goal to be achieved from their relationship and ownership in IMG Commercial or any other Company to be established and agreed upon.

64. All conditions precedent to this action have been satisfied or waived.

WHEREFORE, IMG respectfully requests this Court to enter judgment against Defendants, Jerry Keen and Brian Keen, for damages, interest, costs, and for any further and other relief this Court deems appropriate and just. Plaintiff reserves the right to seek a claim for punitive damages.

## COUNT IV- LEGAL MALPRACTICE- WILLIAM MEGNA

65. IMG hereby re-alleges and incorporates the allegations of Paragraph 1 through 39 as if fully set forth herein.

66. William Megna is an attorney, licensed in the State of Florida, who was representing and performing legal services for IMG in 2010. As part of Megna's duties, he was responsible for assisting in the development and implementation through obtaining approval for a MEWA for the HBAG among others. During the representation of IMG, Megna became aware of the fact that Brian Keen and Jerry Keen intended to independently obtain a MEWA and were in fact in the process of stealing the HBAG business subsequent to the completion of the development of the MEWA and that they intended to secure the HBAG business on their own.

67. Instead of contacting IMG and alerting the Company to this fact, Megna was negligent and failed to report this matter to IMG, his client, and instead continued with his work to complete the MEWA legislation and monitor it through the approval process for the HBAG even though Megna was aware that his purpose in creating the MEWA legislation no longer existed and the actions of these individuals with whom Megna had been dealing, now both had interests contrary to the interests of IMG.

68. Megna's failure to report this to IMG or otherwise act to prevent this from occurring, was a breach of his duty and was the proximate cause of damages to IMG since IMG ultimately lost all of the business related to the use of MEWAs through the relationship previously established by IMG for the purpose of using MEWAs and generating income through the sale of insurance products.

69. As a direct and proximate result of William Megna's negligence, IMG has suffered damages in the form of the lost business and associated profits resulting from the lost MEWA business.

70. All conditions precedent to bringing this action have been satisfied or otherwise waived.

WHEREFORE, IMG respectfully requests this Court enter judgment against William Megna for damages, cost, interest, and any other and further relief this Court deems appropriate and just.

**COUNT V- BREACH OF CONTRACT- BRIAN KEEN**

71. IMG hereby re-alleges and incorporates the allegations of Paragraph 1 through 3 and 6 as if fully set forth herein.

72. On or about September 1, 2010, IMG and Brian Keen entered into an oral contract in Jacksonville, Florida, whereby IMG agreed to allow Brian Keen to take and develop IMG's life insurance business in exchange for Brian Keen paying IMG five (5) percentage points on all contracts and life insurance business and allowing IMG to keep all renewal income from the same life insurance policies.

73. As a result of the oral contract, IMG permitted Brian Keen to take all of the business and Brian Keen took the IMG Life Insurance business.

74. Even though he has taken the life insurance business and received income therefrom, Brian Keen has failed and continues to fail to pay IMG the five (5) points and the renewal income as agreed upon and is now receiving all the income generated by the life insurance business.

75. IMG has fulfilled all of its obligations under the contract.

76. IMG has suffered damages in Jacksonville, Florida, as a direct result of the breach of contract by Brian Keen.

WHEREFORE, Plaintiff IMG respectfully requests this Court to enter judgment against Brian Keen for damages, interest, costs, and for any other and further relief this Court deems appropriate and just.

**COUNT VI- CONVERSION - BRIAN KEEN**

77. IMG hereby re-alleges and incorporates the allegations of Paragraph 1 through 3 and 6 as if fully set forth herein.

78. IMG provided a personal computer to Brian Keen for his use while employed by IMG and for the purpose of assisting him in obtaining business on behalf of IMG.

79. Brian Keen is no longer employed at IMG and, despite this fact, has taken and kept the personal computer belonging to IMG. IMG owns and has the right to possess the personal computer.

80. IMG has also recently learned that reimbursement monies paid to Brian Keen on his representation that they were business related when they were not in fact business related, but rather were for Brian Keen's personal expenses. These monies belong to IMG and IMG has the right to possess these monies.

81. Brian Keen was not authorized to take the personal computer after he was no longer employed by IMG nor was he authorized to receive reimbursement for personal expenses. Brian Keen intentionally interfered with and exercised dominion over the personal computer and monies belonging to IMG and thereby deprived IMG of their use.

82. Brian Keen has taken IMG's computer and the monetary reimbursement for personal expenses with the intent to exercise over ownership over the computer inconsistent with IMG's right of possession.

83. Brian Keen's unauthorized acts have deprived IMG in Jacksonville, Florida, of its property permanently or for an indefinite time.

84. IMG has demanded the return of the property taken without the authorization of IMG, but Brian Keen refuses to return the property.

85. All conditions precedent to bringing this action have been satisfied or waived.

WHEREFORE, Plaintiff IMG respectfully requests this Court to enter judgment against Brian Keen for damages, costs, interest, and any other and further relief this Court deems appropriate and just. Plaintiff reserves the right to seek a claim for punitive damages.

## REPLEVIN

86. IMG hereby re-alleges and incorporates the allegations of Paragraph 1 through 3 and 6 as if fully set forth herein.

87. IMG provided a personal computer to Brian Keen for his use while employed by IMG and for the purpose of assisting him in obtaining business on behalf of IMG.

88. Brian Keen is no longer employed at IMG and, despite this fact, has taken and kept the personal computer belonging to IMG despite Plaintiff's demand for same. IMG owns and has the right to possess the personal computer.

89. Brian Keen was not authorized to take the personal computer after he was no longer employed by IMG and the computer has been wrongfully detained

90. To Plaintiff's best knowledge, information, and belief, the value of the personal computer is $500 and that it is located with Brian Keen at 200 Plantation Chase, Suite 9, St. Simons Island, GA 31522.

91. Brian Keen has threatened to and/or is engaging in conduct that will place the computer in danger of destruction, concealment, or waste.

92. The computer has not been taken for a tax, assessment, or fine pursuant to law.

93. The computer has not been taken under an execution or attachment against the property of Plaintiff.

94. Plaintiff claims and requests an order of the Court for a writ of replevin covering the personal computer.

95. All conditions precedent to bringing this action have been satisfied or waived.

96. IMG has retained the services of the undersigned counsel to represent its interests in this matter and is obligated to pay reasonable attorney's fees for the legal services provided.

WHEREFORE, Plaintiff IMG respectfully requests the issuance of an order to show cause why the prejudgment writ of replevin should not issue for the computer, a writ of prejudgment writ of replevin, judgment for possession of the computer, judgment for damages for detention and waste of the computer, attorney's fees pursuant to Florida Statute § 78.20, costs, interest, and any other and further relief this Court deems appropriate.

## REQUEST FOR JURY TRIAL

Plaintiff respectfully requests trial by jury on all causes of action triable by jury.

FORD, MILLER & WAINER, P.A.

P. CAMPBELL FORD, ESQUIRE
Florida Bar No.: 0480495
1835 N. Third Street
Jacksonville Beach, Florida 32250
Telephone: (904) 390-1970
Facsimile: (904) 390-1975
Attorney for Plaintiff