UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

**INDEPENDENT MARKETING
GROUP, INC.,**

        Plaintiff,

v.                           Case No.: **3:11-cv-447-J-25MCR**

**JERRY KEEN, et al.,**

        Defendants.

_____/

## O R D E R

**THIS CAUSE** is before the Court on Defendants' Sur-Reply Brief in Support of Its Response to the Court's May 31, 2011 Order Addressing Amount in Controversy (Dkt. 26) and Defendants' Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Transfer Venue (Dkt. 4).

### I.    Background and Amount in Controversy Issue

On May 5, 2011, this case was removed from state court (Dkt. 1). Plaintiff is alleging six Counts in its Complaint: Breach of Fiduciary Duty (Count I); Tortious Interference with Business Relationship (Count II);

Fraud (Count III); Legal Malpractice (Count IV); Breach of Contract (Count V); and Conversion/Replevin (Count VI).

On May 12, 2011, Defendants filed a Motion to Dismiss for Lack of Personal Jurisdiction or to Transfer Venue (Dkt. 4). On May 26, 2011, Plaintiff responded to Defendants' Motion (Dkt. 8).

On May 31, 2011, the Court, *sua sponte*, issued an Order directing the Defendants to provide the Court with documentation to demonstrate that the amount in controversy exceeds $75,000 (Order, Dkt. 11).

On June 6, 2011, the Defendants responded to the Court's Order (Dkt. 12). Defendants cited to *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 755 (11th Cir. 2010) to support their position that they have demonstrated that the amount in controversy exceeds $75,000. (Defendant's Response, Dkt. 12, Pg. 1). Defendants contend that Plaintiff's claims include "lost income." (Response, Dkt. 12, Pg. 2; *See* Complaint, Dkt. 2, Pg. 15, Para. 54) ("The damages . . . include . . . the debt incurred by [Plaintiff] to fund all of the salaries and expenses associated with the development of the [Multiple Employer Welfare Arrangement (MEWA)][1] business.").

---

[1] "A MEWA is an arrangement that permits a group of employers belonging to common trade, industry or professional associations to (*continued...*)

Defendants argue that Plaintiff paid Defendant Brian Keen a salary of $16,363.34 as an employee and consulting fees in the amount of $144,411.82 as an independent contractor in 2010. (Response, Dkt. 12, Pg. 2). Plaintiff also paid Defendant Jerry Keen a salary of $10,033 as an employee and consulting fees in the amount of $75,000 as an independent contractor in 2010. (Id.). Defendants submitted IRS forms as exhibits (Dkt. 12-1; Dkt. 12-2), arguing that "these claimed damages, alone, demonstrate that the amount in controversy exceeds $75,000." (Response, Dkt. 12, Pg. 2).

On June 16, 2011, Plaintiff's replied to Defendants' Response, Plaintiff contends that the IRS forms the Defendants attached as exhibits fail "to comply with the established standard required by law and Defendants' notice of removal should be rejected." (Reply, Dkt. 21, Pg. 1).

The Court permitted Defendants to submit a Sur-Reply to Plaintiff's Reply (Order, Dkt. 25). In their Sur-Reply, Defendants contend that the IRS forms they attached as exhibits were provided to Defendants by Plaintiff. (Sur-Reply, Dkt. 26, Pg. 1-2). Defendants Brian J. Keen and Jerry Keen submitted declarations about the IRS forms to support the amount in

---

(...continued) self-fund their benefits programs and offer, collectively, health insurance to their employees." (Motion, Dkt. 4, Pg. 2).

controversy. (Declaration of Jerry Keen, Dkt. 26-1; Declaration of Brian J. Keen, Dkt. 26-2).

In *Pretka*, the Eleventh Circuit held that a party seeking to remove a case to federal court pursuant to the first paragraph of 28 U.S.C. 1446(b), i.e., within the first thirty days of service, is not restricted in the types of evidence it may use to satisfy the jurisdictional requirements for removal. *Pretka*, 608 F.3d at 755. "Defendants may introduce their own affidavits, declarations, or other documentation. . . ." *Id.* at 755. Moreover, district courts are permitted to make "reasonable deductions, reasonable inferences, or other reasonable extrapolations[]" and need not "suspend reality or shelve common sense in determining whether the face of a complaint . . . establishes the jurisdictional amount." *Id.* at 754; 770. "Instead, courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1062 (11th Cir. 2010).

Adhering to the guidelines set forth in *Pretka* and *Roe*, the Court concludes that Defendants have demonstrated that the amount in controversy "more likely than not exceeds the . . . jurisdictional requirement." *Roe*, 613 F.3d at 1061. Defendants' exhibits, the IRS forms

4

and declarations from Defendants (Dkt. 12-1; Dkt. 12-2; Dkt. 26-1; Dkt. 26-2), allow the Court to reasonably infer or deduce that these figures demonstrate the amount in controversy.

Plaintiff pleads that it is seeking damages for lost income that includes but is not limited "to paying back the debt incurred by [Plaintiff] to fund all of the salaries and expenses associated with the development of the [Multiple Employer Welfare Arrangement] business." (Complaint, Dkt. 2, Pg. 15, Para. 54). Defendants' exhibits aid in illustrating the amount of salaries and expenses; thus, the Defendants have met their jurisdictional burden in this case.

## II. Motion to Dismiss for Lack of Personal Jurisdiction or to Transfer Venue

### i. Personal Jurisdiction Standard

Federal courts sitting in diversity use a two step inquiry in order to assess personal jurisdiction over the defendants. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996). First, the court must determine whether the exercise of jurisdiction is proper under the state's long-arm statute. *Cable/Home Commc'n Corp. v. Network Prod.*, 902 F.2d 829, 855 (11th Cir. 1990).[2] Second, the court must determine whether

---

[2] Many internal citations have been omitted from this Order.

sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment. *Id.*

The plaintiff bears the burden of making out a *prima facie* case for personal jurisdiction by presenting sufficient evidence to withstand a motion to dismiss. *See Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). The defendant then must raise a "meritorious challenge to personal jurisdiction" through affidavits, documents, and testimony. *Sculptchair, Inc.*, 94 F.3d at 627. If this is done, the burden shifts back to the plaintiff to prove jurisdiction by affidavits, testimony, or documents. *Id.* If the plaintiff's Complaint and the defendant's evidence conflict, "the district court must construe all reasonable inferences in the plaintiff's favor." *Brennan v. The Roman Catholic Diocese of Syracuse New York, Inc.*, 322 Fed.Appx. 852, 854 (11th Cir. 2009).

### a. Florida's Long-Arm Statute, Fla. Stat. § 48.193(1)(b)

Defendants contend that this Court lacks personal jurisdiction under Florida's Long-Arm statute. (Motion, Dkt. 4, Pg. 9-14).

Plaintiff argues that this Court does have personal jurisdiction over the Keen Defendants because Plaintiff alleges that the Defendants committed tortious acts which satisfy the application of Florida's Long-Arm statute. (Response, Dkt. 8, Pg. 6-9). Plaintiff also argues that this Court has

6

personal jurisdiction over Defendant William Megna because Plaintiff has asserted a legal malpractice claim against Megna and legal malpractice is a tortious act.

Florida's long-arm statute provides that:

(1)Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself, and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action from the doing of any of the following acts:

(b) Committing a tortious act within this state.

Fla. Stat. § 48.193(1)(b). Because the scope of Florida's long-arm statute is an issue of state law, this Court must construe the long-arm statute as would the Florida Supreme Court. *Sculptchair*, 94 F.3d at 627.

Section 48.193(1)(b) "permits jurisdiction over the nonresident defendant who commits a tort outside of the state that causes injury inside the state." *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008). Thus, an out-of-state defendant's physical presence is not required. *Lehigh Technologies, Inc. v. Farrah*, 2009 WL 179672, *5 (M.D. Fla. 2009). Allegations that a defendant committed a tortious act via telephone, e-mail, or written communications into Florida is sufficient to establish long-arm jurisdiction. *See Wendt v. Horowitz*, 822 So.2d 1252, 1260 (Fla. 2002).

7

However, the cause of action must arise from the communications because of the connexity requirement contained in section 48.193(1). *Id.*

In this case, the Court finds that Florida's long-arm statute applies. Plaintiff alleges several torts against Keen Defendants, including tortious interference with a business relationship against Defendant Brian Keen (Count two), Fraud against both Keen Defendants (Count three), and Conversion/Replevin against Defendant Brian Keen (Count six). Florida recognizes fraud as an intentional tort. *Windstar Club, Inc. v. WS Realty, Inc.*, 886 So.2d 986, 987 (Fla. 4th DCA 2004). Plaintiff alleges a claim of legal malpractice against Defendant William Megna (Count four). Legal malpractice is a tort in Florida. *See Cowan Liebowitz & Latman, P.C. v. Kaplan*, 902 So.2d 755, 758 (Fla. 2005).

Defendants argue that the alleged tortious conduct occurred after February 2010 (Motion, Dkt. 4, Pg. 6) and that in February 2010 Plaintiff closed its office in Jacksonville, Florida and relocated its office to St. Simons Island, Georgia. (Motion, Dkt. 4, Pg. 6; Aff. Brian Keen, Dkt. 5, Pg. 4, Para. 6). At that time, Plaintiff physically moved its server containing all of its electronic files, as well as its physical files, to the Georgia office. (Aff. Brian Keen, Dkt. 5, Pg. 4, Para. 6). Defendants also contend that Plaintiff changed its mailing address to a Georgia mailing address. (*Id.*).

8

However, Plaintiff contends that Plaintiff's principal place of business is in Jacksonville, Florida and has always been Jacksonville, Florida. (Complaint, Dkt. 2, Pg. 1, Para. 2; Response, Dkt. 8, Pg. 2). Plaintiff also argues that its bank statements were forwarded to its Georgia address because Defendant Brian Keen, without authorization, had the bank statements forwarded to that address. (See Complaint, Dkt. 2, Pg. 10, Para. 33; see also Dkt. 8, Pg. 2, Fn. 1).

Thus, there appears to be a conflict between Plaintiff's Complaint and Defendants' evidence. The Eleventh Circuit has instructed that if this occurs, "the district court must construe all reasonable inferences in plaintiff's favor." Brennan, 322 Fed.Appx. at 854.

Therefore, the Court will have to construe the evidence in favor of Plaintiff and conclude that Plaintiff's principal place of business is Jacksonville, Florida.[3] In addition, as noted above, the Court finds that Florida's long-arm statute applies in this case. Plaintiff alleges that Defendants committed tortious acts. The Defendants' physical presence is

---

[3] "An evidentiary hearing on a motion to dismiss for lack of personal jurisdiction is discretionary but not mandatory." Koock v. Sugar & Felsenthal, LLP, 2010 WL 1223794, *2 (M.D. Fla. 2010).

not required for the commission of a tortious act in Florida. *Susie's Structures, Inc. v. Ziegler*, 2010 WL 2136513, *3 (M.D. Fla. 2010).

The Court is not required to conduct a full-scale inquiry into whether the defendant committed a tort when assessing a motion to dismiss for lack of personal jurisdiction. *Brennan*, 322 Fed.Appx. at 855. "Instead, when a plaintiff alleges a claim, and the record is in dispute as to the accuracy of the claim, we can construe the facts in the light most favorable to the plaintiff and hold that the alleged claim satisfies Florida's Long-Arm Statute." *Id.*

In this case, while Defendants contend all of the alleged tortious conduct occurred in Georgia (Motion, Dkt. 4, Pgs. 9-13), Plaintiff alleges that its "fraud count is based upon a series of false misrepresentations that Brian Keen and Jerry Keen made to [Plaintiff] in Florida through emails, texts, and telephone calls." (Response, Dkt. 8, Pg. 6-7). Although Defendants argue that "Megna denies that he ever represented [Plaintiff] in any legal capacity" and has not practiced law in Florida since 1987 (Motion, Dkt. 4, Pg. 13; Pg. 14, Fn. 12), Plaintiff contends that Megna committed legal malpractice by not revealing information. (*See* Complaint, Dkt. 2, Pg. 18-19).

Therefore, taking Plaintiff's allegations as true, the facts in Plaintiff's Complaint can fairly be read to assert jurisdiction under section 48.193(1)(b) and the Defendants' conduct brings them within the purview of Florida's long-arm statute. *See Brennan*, 322 Fed.Appx. at 854 ("If the forum's long-arm statute provides jurisdiction over one claim, the district court has personal jurisdiction over the entire case so long as the claims arose from the same jurisdiction generating event.").

## b. Due Process Considerations

Because the Court finds that Defendants are subjected to Florida's long-arm statute, the Court will now analyze the Constitutional requirements of Due Process and traditional notions of fair play and substantial justice. *See Int'l Shoe Co v. Wash.*, 326 U.S. 310, 316 (1945).

## 1. Minimum Contacts

Defendants argue that exercising personal jurisdiction over the Defendants would violate due process. (Motion, Dkt. 4, Pg. 14-16). Defendants contend that: Defendant Jerry Keen's contacts with Florida were isolated and minimal (Dkt. 4, Pg. 15); Defendant Brian Keen's contacts with Florida had no relation to the conduct alleged in the Complaint (Dkt. 4, Pg. 16); and Defendant Megna does not have sufficient contacts in Florida to reasonably expect to be haled into a Floridian Court

because he was not hired to represent Plaintiff's legal interests (Dkt. 4, Pg. 16).

Plaintiff argues that the same misrepresentations that form the fraud Count alleged against the Keen Defendants also serve to establish the required minimum contacts. (Response, Dkt. 8, Pg. 10). Plaintiff also contends that the Keen Defendants traveled to Jacksonville, Florida on several occasions (Dkt. 8, Pg. 10) and Defendant Megna is licensed to practice law in Florida (Dkt. 8, Pg. 11).

Taking Plaintiff's allegations as true, the Court finds that Plaintiff has sufficiently alleged the existence of minimum contacts into Florida by the Defendants to satisfy the minimum contacts requirement of due process.

Defendants argue that to satisfy the minimum contacts element for personal jurisdiction (1) the contacts have to be related to Plaintiff's cause of action or have given rise to it; (2) the contacts must involve some act by which the Defendants have purposefully availed themselves of the privilege of conducting activities within the forum; and (3) the Defendants' contacts with the forum must be such that the Defendants should reasonably anticipate being haled into court there. (Response, Dkt. 4, Pg. 14-15) (citing to Bernardele v. Bonorino, 608 F. Supp. 2d 1313, 1326 (S.D. Fla. 2009).

However, this test does not apply to claims for intentional torts. *Oldfield v. Pueblo de Bahia Lora*, 558 F.3d 1210, 1221, fn. 28 (11th Cir. 2009). In analyzing intentional torts, the applicable test is the "effects" test utilized in *Calder v. Jones*, 465 U.S. 783 (1984): A showing that the defendant (1) committed an intentional tort, (2) that was directly aimed at the forum, (3) causing an injury within the forum that the defendant should reasonably anticipated. *Oldfield,* 558 F.3d at 1221, fn. 28.

The commission of an intentional tort satisfies the personal availment requirement, and presumes that the Defendants should have anticipated being haled into court in the forum to answer for the resulting injury. *New Lenox Indus., Inc. v. Fenton*, 510 F.Supp.2d 893, 904 (M.D. Fla. 2007). In this case, Plaintiff alleges that the Keen Defendants committed fraud. (*See* Complaint, Dkt. 2, Pg. 16-18). Fraud is an intentional tort in Florida; therefore, the Keen Defendants should have anticipated being haled into court in Florida.

Plaintiff alleges that Defendant Megna was negligent and committed legal malpractice. (*See* Complaint, Dkt. 2, Pg. 19, Para. 67)("Instead of contacting [Plaintiff] . . . Megna was negligent and failed to report this matter to [Plaintiff], his client. . . .). The minimum contacts test that

Defendants cite to[4] does apply to Plaintiff's legal malpractice claim against Defendant Megna because Plaintiff alleges that Megna was negligent.

Plaintiff contends that Defendant Megna is licensed to practice law in Florida and was referred to Plaintiff by a contact in Jacksonville, Florida whom Megna provided legal services to. (Response, Dkt. 8, Pg. 11). Plaintiff alleges that it retained Megna "to assist in the legislative process for the development of MEWA legislation with the state of Georgia and to represent its interest in Jacksonville, Florida." (Complaint, Dkt. 2, Pg. 4). As an attorney licensed in Florida, representing the interests of a Florida-based corporation, it is such that Defendant Megna availed himself to Florida's laws and could reasonably anticipate being haled into court in Florida.

Thus, taking Plaintiff's allegations as true, Plaintiff has satisfied the minimum contacts requirement for all Defendants.

### 2. Fair Play and Substantial Justice

Defendants contend that the exercise of personal jurisdiction in this case will affect notions of fair play and substantial justice because the Keen Defendants reside in St. Simons Island, Georgia; Defendant Megna resides in New Jersey; and travel expenses to defend a lawsuit in the Middle

---

[4] The applicable test to Plaintiff's legal malpractice claim against Defendant Megna is the three-factor *Bernardele test*. *(See* page 12 of this Order).

District of Florida would impose a severe financial burden on the Defendants. (Motion, Dkt. 4, Pg. 17). Defendants also argue that Florida has no interest in adjudicating this case because all of the alleged acts took place in Georgia and all of Plaintiff's claims relate to a business opportunity permitted by Georgia legislation, created by a Georgia non-profit organization, approved by the Georgia Commissioner of Insurance, and made available only to Georgia residents. (*Id.*).

Plaintiff argues that the Keen Defendants were employed by a Florida corporation and previously traveled to Florida for employment obligations; Defendant Megna would have to travel whether the case is litigated in Florida or Georgia; and Plaintiff is a Jacksonville, Florida entity that was harmed by Defendants' actions. (Response, Dkt. 8, Pg. 12).

In determining whether jurisdiction would comport with traditional notions of fair play and substantial justice, courts consider the following factors:

> (1) the burden on the defendant in defending the lawsuit; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the states in furthering fundamental substantive social policies.

*Sendtec, Inc. v. Cosmetique, Inc.*, 2008 WL 660297, *5 (M.D. Fla. 2008).

The Court must "consider whether the forum's interest in this dispute and the plaintiff's interest in obtaining relief are outweighed by the burden on the [Defendants] of having to defend [themselves] in a Florida court." *Licciardello*, 544 F.3d at 1284.

The Court finds that exercising personal jurisdiction will not violate notions of fair play and substantial justice. Defendants' inconvenience of travel does not outweigh the factors that mitigate in favor of exercising personal jurisdiction over the Defendants. While not frequently, the Keen Defendants have previously traveled to Florida for meetings when employed by Plaintiff. (Aff. Brian J. Keen, Dkt. 5, Pg. 5, Para. 8; Aff. Jerry Keen, Dkt. 5, Pg. 78, Para. 7). Defendant Megna is licensed to practice law in Florida. (Aff. William Megna, Dkt. 5, Pg. 11, Para. 4).

Plaintiff is alleging fraud against the Keen Defendants; fraud is an intentional tort in Florida. "Florida has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida." *Licciardello*, 544 F.3d at 1288. While Plaintiff pleads that Defendant Megna committed legal malpractice for being negligent, Defendant is licensed to practice law in Florida and was representing the interests (albeit non-legal interests according to Defendant Megna) of a Florida-based company.

The Court concludes that it may properly exercise personal

jurisdiction over all Defendants.

### ii.    Transfer of Venue, 28 U.S.C. § 1404

Alternatively, Defendants contend that if the Court does not dismiss

Plaintiff's claims due to lack of jurisdiction, this Court should transfer the

case to the Southern District of Georgia because it is a more convenient

venue. (Motion, Dkt. 4, Pg. 18-24).

1404(a) provides that "[f]or the convenience of parties and witnesses,

in the interest of justice, a district court may transfer any civil action to any

other district or division where it might have been brought." 28 U.S.C. §

1404.

The party seeking a transfer of venue "has the burden of persuading

the trial court that the transfer is appropriate and should be granted."

*American Aircraft Sales Intl. v. Airwarsaw, Inc.*, 55 F.Supp.2d 1347, 1351

(M.D. Fla. 1999). "In order to overcome the presumption in favor of

Plaintiff's choice of forum, the movant must show the balance of

convenience is 'strongly in favor' of the transfer." *Id.* The standard of

transfer under section 1404(a) allows broad discretion of the trial court and

each case should be decided on the particular facts. *Id.*

## a. Venue in the Southern District of Georgia

The threshold question in the Motion to Transfer Venue analysis is whether this case may have been brought in the desired district of transfer, the Southern District of Georgia. *Eye Care Intern., Inc. v. Underhill*, 119 F.Supp.2d 1313, 1318 (M.D. Fla. 2000). The Middle District of Florida has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a) (Diversity of citizenship; Amount in controversy) and 28 U.S.C. § 1441(b) (Actions removable generally).

Based on the allegations of the Complaint, the fact that the Keen Defendants reside in Georgia (Motion, Dkt. 4, Pg. 23), and Plaintiff's allegations are associated with the development of Georgia MEWA legislation (Complaint, Dkt. 2, Pg. 4-5, Para. 17), the Court finds that this action could have been brought in the Southern District of Georgia. Hence, the initial requirement of Defendants' Motion to Transfer Venue has been met.

## b. Section 1404(a) Factors

When analyzing a Motion to Transfer Venue, the Eleventh Circuit has outlined the following factors for determining whether to transfer under section 1404(a):

(1) the convenience of the witnesses; (2) the location of relevant
documents and the relative ease of access to sources of proof; (3)
the convenience of the parties; (4) the locus of operative facts; (5)
the availability of process to compel the attendance of unwilling
witnesses; (6) the relative means of the parties; (7) a forum's
familiarity with the governing law; (8) the weight accorded a
plaintiff's choice of forum; and (9) trial efficiency and the interests
of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135, fn. 1 (11th Cir.
2005).

## 1. Parties' Section 1404(a) Arguments

In this case, Defendants argue that Plaintiff's claims are based on
events that occurred in Georgia. The alleged tortious acts and damages
relate to the development of Georgia MEWA legislation and a business that
was ultimately formed by the Keen Defendants, after their employment with
Plaintiff was terminated, to market health benefits under the MEWA for
Home Builders Association of Georgia (HBAG) members who are Georgia
residents. (Motion, Dkt. 4, Pg. 19-20). Defendants also argue that the
majority of witnesses reside in Georgia, the location of all relevant
documents is Georgia, and two of the three Defendants reside in Georgia;
thus, based on the totality of circumstances, the interest of justice weighs in
favor of transfer. (Motion, Dkt. 4, Pg. 19-24).

Plaintiff contends that the case should not be transferred because Jacksonville, Florida is Plaintiff's initial forum choice; many of Plaintiff's witnesses reside in Jacksonville; Plaintiff has records located in Florida and Georgia; and transferring the case to Georgia will have a financial impact of Plaintiff. (Response, Dkt. 8, Pg. 13-16).

## 2. Analysis of Section 1404(a) Factors

The Court finds that transfer of venue is not appropriate in this case.

Defendants contend that there are witnesses that live in Georgia, but, according to Plaintiff, there are also witnesses that live in Florida. Defendants contend that the records relative to the case are located in Georgia. Plaintiff does not deny this, but argues that there are relative records in Florida as well.

Defendants contend that the alleged tortious conduct occurred in Georgia. While this may be true, Plaintiff's Complaint contains Florida law-based causes of action such as tortious interference with a business relationship and fraud. Because "[t]he transferee court must apply the law of the state in which the transferor court sits," *McVicar v. Standard Insulations, Inc.*, 824 F.2d 920, 921 (11th Cir. 1987), the Southern District of Georgia will have to apply Florida law. In addition, Defendants contend that this case revolves around Georgia's MEWA legislation. While this may also

be true, it does not appear from Plaintiff's Complaint that Georgia's MEWA legislation is actually at issue. (*See generally* Complaint, Dkt. 2)

Plaintiff's choice of forum is the Middle District of Florida. In the Eleventh Circuit there is a "strong presumption against disturbing [a] Plaintiff's initial forum choice." *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1100 (11th Cir. 2004). The Court is to give less deference when the facts underlying the cause of action occurred outside of the district in which the action is being brought. *Garay v. BRK Electronics*, 755 F.Supp. 1010, 1011 (M.D. Fla. 1991). However, as noted above, Plaintiff is alleging the intentional tort of fraud against the Keen Defendants and the Defendants can be haled into court where the intentional tort allegedly occurred: Jacksonville, Florida. (*See* pgs. 12-13 of this Order). Also, as noted above, Defendant Megna is licensed to practice law in Florida and could reasonably anticipate being haled into court in Florida. (*See* pgs. 13-14 of this Order).

It appears that transferring this case from the Middle District of Florida to the Southern District of Georgia would be shifting the inconvenience of litigation from the Defendants to the Plaintiff. Litigation will always be inconvenient to some party or witness. *Garay*, 755 F.Supp. at 1012. "Where a transfer merely shifts the inconvenience from one party to

another, Plaintiff's choice of forum should remain." *Eye Care Int'l., Inc.*, 119 F.Supp.2d at 1319 (M.D. Fla. 2000).

Thus, the Court's analysis of the section 1404(a) factors weigh against transferring this case and the Court declines to transfer this case to the Southern District of Georgia.

Accordingly, it is **ORDERED**:

1. Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (**Dkt. 4**) is **DENIED**.

2. Defendants' Alternative Motion to Transfer Venue (**Dkt. 4**) is **DENIED**.

**DONE AND ORDERED** this 17 day of August, 2011.

HENRY LEE ADAMS, JR.
United States District Judge

Copies to: Counsel of Record